UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA



Donald L. McCune
    Plaintiff,

v.                                                            Case No. 3:14-30867

United States of America
    Defendant,

## COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIM ACT

Plaintiff, Donald L. McCune ("McCune") for his Complaint against the Defendant, United States of America, states as follows:

### INTRODUCTION

1. This is an action against the Defendant United States of American under the Federal Tort Claims Act, (28 U.S.C. §2671, *et seq.*) and 28 U.S.C. §1346(b)(1), for negligence and professional malpractice in connection with medical care provided to Plaintiff McCune by the Department of Veterans Affairs at the Huntington Veterans Affairs Medical Center.

2. The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, *et seq.*) and 28 U.S.C §1346(b)(1), for monetary damages as compensation for personal injuries caused by the Defendant's negligence.

3. Plaintiff McCune has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act. *Standard Form 95 attached as Exhibit 1.*

4. This suit has been timely filed, in the Plaintiff McCune timely served notice of his claim to the Department of Veterans Affairs less than two years after the incident forming a basis of this suit.

5. Plaintiff McCune is now filing this Complaint pursuant to 28 U.S.C. §2401(b) after receiving the Department of Veterans Affairs' June 30, 2014 "Request for Reconsideration" denial notice. *Administrative Tort Claim Denial Letter attached as Exhibit 2.*

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff McCune is, and at all times relevant hereto was, a resident of Kanawha County, West Virginia.

7. Defendant United States of America, through its agency, the Department of Veterans Affairs, operates the Veterans Affairs Medical Center located at 1540 Spring Valley Drive Huntington, West Virginia.

8. Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the Huntington VA Medical Center are hereinafter collectively referred to as "Huntington VAMC".

9. At all times relevant to this Complaint, the Huntington VA Medical Center held themselves out to the Plaintiff and eligible beneficiaries, as a provider of high quality health care services, with the expertise necessary to maintain the health and safety of patients like the plaintiff.

10. At all times relevant to this complaint, the directors, officers, operators, administrators, employee, agents, and staff were employed by and/or acting on behalf of the Defendant. Futhermore, the Defendant is responsible for the negligent acts of their employees and agents under respondeat superior.

11. Jurisdiction is proper under 28 U.S.C. §1346(b)(1).

12. Venue is proper uder 28 U.S.C. §1402(b) in that all, or substantial part of the acts and omission forming the basis of the claims occurred in the Southern District of West Virginia.

## FACTUAL ALLEGATIONS

13. On January 6, 2009, Mr. McCune underwent a left total knee arthroplast procedure at the Hutington VA Medical Center. Before this operation was preformed, Mr. McCune was given a nasal swap to test for MRSA. That test was negative.

14. Mr. McCune was relased from the Huntington VAMC on January 9, 2009.

15. On January 14, 2009, Mr. McCune returned to the Huntington VAMC for a Physical Theapy Consult. He was refered to surgical clinic after the physical therapist noted that the dressing on his left knee had bleed through. Mr. McCune had complained of an upset stomach and diarrhea the day prior, pain and increased swelling throughout the knee were also noted. Although he presented with these signs of infection, no lab work was done. Mr. McCune was sent home.

16. January 22, 2009, Mr. McCune returned to the Huntington VAMC surgical clinic for wound examination. A large amount of malodorous, brown drainage with bright red drainage as well was noted. Cultures were obtained and sent to the lab. The area around the incision line was reddened with some areas of dark tissue within the incision itself. He was diagnosed with a surgical wound infection and was admitted to receive IV antibotic treatment. He was started on Vancomycin 1500mg for the infected wound as well as Zosyn and Ciprofloxacin.

17. After waiting several days for the cultures results, positive for MRSA, and for the original othopedic surgeon to return to town, the Huntington VAMC removed the infected prosthetic commponets, drained the abscess, and placed antibiotic spacers in Mr. McCunes left knee. The surgeon noted that the left knee was filled with pus, a 12cm opening was left to allow for placement of a wound vac device.

18. Mr. McCune was discharged from the Huntington VAMC on January 29, 2009 with a PICC line so he could continue his scheduled 6 weeks of antibiotic treatment at home. A wound vac machine was ordered to be delivered to the home. The Huntington VAMC also arraged for a Home Health Care agency to install the wound vac machine to Mr. McCune's infected knee when it arrived. This Home Health Care nurse was to change the wound vac dressing 2-3 times a week, assist with PICC line management, IV antibiotics, and collect blood samples for lab work.

19. The Home Health Care nurse made her first visit to Mr. McCune's home on February 2, 2009. She contacted the Huntington VAMC concered over a rash that Mr. McCune had. On the advise of the Huntington VAMC, Mr. McCune was taken by ambulance to Charleston Area Medical Center General Division Emergency Room then transported by ambulance to the Huntington VAMC.

20. Although Mr. McCune insisted it was only a contact rash, the Huntington VAMC misdiagnosed that Mr. McCune was allegic to Vancomycin. The Vancomycin was stopped immediately and he was switch to a much lower dose of Daptomycin to complete his 6 weeks of antibiotic therapy. From 1500mg of Vacomycin to 500mg of Daptomycin.

21. Mr. McCune was discharged from the Huntington VAMC on Febuary 6, 2009. Mr. McCune continued his care at home with the assistance of a Home Health Care nurse. This nurse visited 2-3 a week to change Mr. McCune's wound vac dressing, and to drawn blood for lab work.

22. On February 20, 2009, Mr. McCune Home Health Care nurse telephoned the Huntington VAMC to request additional pain medication for Mr. McCune. She telephoned them again on February 23, 2009, Mr. McCune was still needing pain medicaiton. Mr. McCune IV antibiotic thearpy ended on Febuary 28, 2009. On On March 6, 2009, Mr. McCune complained of severe pain shooting from his back down his legs.

23. On March 9, 2009, Mr. McCune's Home Health Care nurse contacted the Huntington VAMC to inform them that "something" had dislodged in Mr. McCune's left knee. The knee area was red in appearance with a "bony type" protrusion coming from the side of the knee. She also indicated a "bone on bone" sound when the knee was moved or bent. He was in excruciating pain. Mr. McCune was instucted to report to the Huntington VAMC to be evaluated. The Huntington VAMC Ortho surgeon concluded that Mr. McCune had a subluxation of his antibiotic spacers and noted that it was actually a "good thing". He ordered several test to be done at that time, and Mr. McCune was sent back home.

24. Mr. McCune Home Health Care nurse contacted the Huntington VAMC on March 13, 2009, to inform them that Mr. McCune seemed confused, she asks for any additional orders, she was not given any.

25. The next day, March 14. 2009, Mr. McCune's daughter telephoned the Huntington VAMC. She informs them of Mr. McCune's increased confusion, and voices her concern that perhaps his MRSA infection has returned. Mr. McCune's daughter is advised to seek emergency care, that the symtoms she described could mean he was possibly having a stroke. Mr. McCune was taken to St. Francis Emergency Room where several test were done. St. Francis notified the Huntington VAMC that Mr. McCune a had Negative CT Scan, acute renal insufficiency, and a raised, tender area at the left sternoclavicular area.

26. Mr. McCune was transfered by ambulance to the Huntington VAMC on March 15, 2009, he was admitted for having an altered metal status. He complained of pain in his knee and his left clavicle. Surgery was consulted to evaluate the new sternoclavicular mass. Mr. McCune's lab work noted elevated levels consistent with infection. The Huntington VAMC concluded that the MRSA infection had entered his bloodstream and spread to the sternoclavicular joint.

26. On March 16, 2009, a Huntington VAMC surgeon did an incision and drainage procedure on Mr. McCune's sternal abscess. The surgeon noted a large amount of pus was drained from the area. This sternoclavicular joint abscess occured while on Daptomycin for his prior left knee abscess and baceremia.

27. On March 17, 2009, the Huntington VAMC enlarged the incision to the left sternoclavicular junction and changed the packing, a large amount of pus continued to drain from the wound. The Huntington VAMC also noted that Mr. McCune's mental status seemed to improve after draining the sternoclavicular joint abscess.

28. On March 18, 2009, Mr. McCune complained of left knee pain and tenderness around his left chest lesion. The Huntington VAMC had now confirmed that the sternoclavicular abscess has spread to the bone, with noted changes of the clavicle and sternum.

29. On March 19, 2009, during his hospital stay at the Huntington VAMC, Mr. McCune, in addition to his MRSA sepsis in the left knee and in the left sternoclavicular junction, was now being treated for new onset pneumonia and anemia. Mr. McCune was given two units of blood and placed on a triple antibiotic therapy which included Vancomycin.

30. On March 20, 2009, the Huntington VAMC noted that Mr. McCune had delveloped an area of pressure necrosis caused from the dislodged hard antibiotic-cement spacer beneath the skin.

31. Mr. McCune was visited by Huntington VAMC Physical Therapist on March 21, 2009, who noted that Mr. McCune has had a long complicated medical course with multiple infections and he was getting weaker and more debilitated as time goes on. He described his mobility as mostly wheelchair level.

32. On March 23, 2009, the Huntington VAMC operated on Mr. McCune's left knee to remove and replace the dislodged cement spacers. The surgeon noted that a deep infection was still present despite the previous incision and drainage, placement of antibiotic-cement spacers and 6 weeks of PICC line heavy-duty antibiotics.

33. Mr. McCune was again taken to surgery again on March 26, 2009, to have the MRSA infected bone and tissue removed from his sternoclavicular joint. The head of the clavical was removed as well as a portion of the sternum and of the first rib. The wound was cleaned with a pulse irrigatior and a wound vac was placed to aid with closure and cleansing of the wound.

34. On March 27, 2009, during his stay at the Huntington VAMC, Mr. McCune developed open wounds on both of his heals, hydrocolioid was applied.

35. Mr. McCune was returned to surgery on March 30, 2009, this procedure was to install a new wound vac system and inspection of the wound.

36. After a two week stay, Mr. McCune was discharged from the Huntington VAMC on March 31, 2009. Home Health was arranged to assist in Mr. McCune's recovery at home.

37. Mr. McCune had to return to the Huntington VAMC on April 6, 2009 to have his wound vac dressing changed and again on April 13, 2009, at this time the Huntington VAMC also removed the sutures from his left knee and preformed lab work. His Vancomycin dosage was lowered from 1000mg to 750mg with therapy scheduled to end on May 1, 2009.

38. The Huntington VAMC had scheduled Mr. McCune's surgery for May 26, 2009. Mr. McCune was expecting to have his total knee replacement replanted at this time, instead the surgeon found the knee joint filled with 500cc of Turbid, a brownish fluid consistent with a persistant deep infection. Deep cultures were obtained. Any necrotic debris was removed. The knee was irrigated and antibiotic cement spacer were once again placed in the knee. Mr. McCune had to endure another round of 750mg Vancomycin though a PICC line. Mr. McCune was discharged from the Huntington VAMC on May 28, 2009.

39. Throughout the month of June, 2009, Mr. McCune continued his recovery at home with the assistance of a Home Health Care nurse. He traveled at least once a week from Charleston to the Huntington VAMC for wound checks and dressing changes. The Huntington VAMC had scheduled his left total knee replacement replant for July 28, 2009.

40. On July 9, 2009, the Huntington VAMC noted that Mr. McCune's PICC line had pulled out 5-8 cm. Their Infectious Disease Specialist recommend that Mr. McCune continue the Vancomycin through the PICC line until 1 week prior to knee surgery. The catherter on Mr. McCune's PICC line was removed and replaced. The wound vac was removed from Mr. McCune's sternoclavicular joint and a wet to dry dressing was applied.

41. On July 14, 2009 Mr. McCune was notified that his knee surgery scheduled for July 28, 2009 had been postpond to allow for the sternoclavicular joint wound to heal.

42. On July 20, 2009, the Orthopedics Surgeon noted that Mr. McCune knee wound was fully healed and dry. The Vancomycin was stopped at that time and Mr. McCune's PICC line was pulled. He had been on Vancomycin for 54 days. Mr. McCune's knee surgery was rescheduled for August 18, 2009.

43. Mr. McCune was admitted to the Huntington VAMC on August 6, 2009, he had cellulitis present on his sternum and pus and erythema in the left sternoclavical wound. His left knee was noted to have blanching erythem, swollen and warm to the touch. Mr. McCune was restarted on Vancomycin and MRSA swab was collected and sent to the lab. Mr. McCune's knee reconstuction surgery was canceled at this time with a plan to reschedule when surgically cleared.

44. The Vancomycin dose was increased to 1000mg, a PICC line was placed and Mr. McCune was discharged to home on August 10, 2009.

45. Mr. McCune returned to the Huntington VAMC on August 19, 2009 to have a Fasciomyocutaneous transpoaitional flap surgery to his left sternoclavicular area to cover his wound. Methodical wound search was carried out to prevent any retained foreign bodies and a Jack Pratt Drain was implanted. During his overnight hospital stay, Mr. McCune's left knee was aspirated and about 5cc of bloody joint fluid was obtained and sent to the lab. These cultures were positive for MRSA.

46. Mr. McCune completed his Vancomycin therapy on September 18, 2009

47. On September 28, 2009, Mr. McCune visited the orthopedic clinic at the Huntington VAMC complaining of severe pain in his left knee. He had noted redness, heat and swelling to the knee as well as some streaking.

48. On October 2, 2009, the Huntington VAMC infectious desease specialist noted that Mr. McCune had increasing swelling in his left knee and that he may need another incision and drainage procedure done to his knee prior to his knee replacement.

49. Mr. McCune called the Huntington VAMC on October 6, 2009 to request an appointment with the orthopedic surgeon. In addition to the pain and swelling, his knee is now draining. Mr. McCune was instucted to stop by the ortho clinic to have it checked during his next scheduled visit.

50. On October 8, 2009, Mr. McCune visited the Huntington VAMC to have his sternoclavical wound checked. As advised, he stops by the ortho clinic. He informed the surgeon that he had had a swollen spot on the inside of his left knee that had broke open and pus shot across the room. The surgeon not that Mr. McCune had an open abscess overlying the medial left knee joint.

51. The Huntington VAMC preformed another insision and drainage procedue on Mr. McCune on October 9, 2009. Inflamed synovium was removed until clean bone was encountered and deep cultures were obtained. Smaller antibiotic cement spacers were used to prevent skin tension with closure. The Huntington VAMC restarted 1000mg dose of Vancomycin.

52. Mr. McCune was released from the hospital on October 15, 2009 after a PICC line was placed so he could receive another 6 weeks round of Vancomycin.

53. This round of Vancomycin theapy was completed on Novemeber 20, 2009. The Huntington VAMC scheduled Mr. McCune for knee replacement surgery for January 26, 2010.

54. After being sediatary for over a year, Mr. McCune was finally cleared to have a reimplantation of the left total knee prosthesis components. This surgery was preformed at the Huntington VAMC on January 26, 2010. Vancomycin was adminstered prior to the surgery and antibiotic cement was used. The wound was closed over a Hemovac drain.

55. On January 27, 2010. Mr. McCune's surgical dressing was removed. The left knee wound was oozing blood at multiple points on the incision. Steri-strips were applied above and below the bleeding points and a new bulky dressing was applied.

56. When Mr. McCune got up to go to the restroom on January 28, 2010, the bluky dressing on his left knee had bled though. The dressing was removed and more steri-strips were applied under a new dressing. Mr. McCune reported intense pain in his left knee.

57. On January 29, 2010, Mr. McCune's knee wound was still bleeding through the dressing. His dressing was changed with a adominal pad under an ace bandage. Mr. McCune was discharged from the Huntington VAMC with special instuctions to watch for infection.

58. On February 1, 2010, Mr. McCune had informed the Huntington VAMC that he had to change the dressing to his left knee six times over the weekend because of bleed through. His dressing was soaked with blood and there was an active oozing of blood from the lower half of the incision. He was admited to the Huntington VAMC.

59. With compression dressings, knee immobilizerelevation, and bed rest, Mr. McCune's knee continued to soak through his dressing. Mr. McCune was given several units of fresh frozen plasma and after a few days, the Huntington VAMC decided that Mr. McCune needed surgery to address this new abscess or hematoma.

60. On Febuary 5, 2010, Mr. McCune was taken to surgery for an incision and drainage procedure on his left knee. The knee joint was found to be filled with a rust colored fluid. The wound was irrigated using iced saline with Gentamicin and a suction drain was placed deep in the knee. An OpSite dressing was placed over the lower 1/3 of the incision to help facilitate the wound sealing closed. A bulky dressing was applied over the incision followed by a knee immobilizer.

61. On Febuary 8, 2010, the surgeon noted that he soft tissue medial of Mr. McCune left knee was very thin and still had a "sucked in" appearance. Cultures taken from Mr.McCune's knee showed "no growth" in the past 48 hours. Mr. McCune was discharged from the Huntington VAMC to home.

62.     Mr. McCune returned to the Huntington VAMC on February 18, 2010 to have the surgical stitches removed from his left knee.  The wound was cleaned and steri-strips were applied.  He was unable to manage a straight leg raise and complained of lower back pain.  Mr. McCune was unable to walk at this time.

63.     On March 11, 2010, Mr. McCune was at the Huntington VAMC Orthopedic Clinic for a post-op check up.  He reported that he had been trying to strenghten his left leg, but that his knee "wanted to give out" on him.  The surgeon noted that his left knee wound was mostly dry and that there was some superficial infection.  He was instucted to return in six weeks.

64.     Mr. McCune called the Huntington VAMC on March 30, 2010 stating that he had a quarter sized reddened area and pain in his left knee.  His left knee was also draining a bloody colored fluid.  He was advised to come to the clinic for wound check and assessment.

64.     On April 5, 2010, Mr. McCune visited the otho clinic to the Huntington VAMC, with active oozing of blood from a pin hole area over the medial femoral condyle of his left knee.  The surgeon suggested that, in addition to an incision and drainage of this new abcess or hematoma, Mr. McCune should have a gastroc flap procedure to give him some cushion and to bring circulation and hopefully healing to the knee.  Mr. McCune was admitted with a possible deep infection in his left knee with the hope of getting him on the surgery schedule soon to save the total knee revision.

65.     Mr. McCune was started on Vancomycin on April 6, 2010 for empiric coverage of deep infection of left knee.  The Huntington VAMC noted that Mr. McCune had two small nonhealing areas along the incisional line and a small open area on the medial left knee.  When Mr. McCune bent his knee, bloody drainage would run down his left leg. Cultures were obtained and sent to the lab.

66.     On April 7, 2010, Mr. McCune was taken to surgery.  A 22cm curved incision was made just prosterior to the median edge of the tibia and a thick posterior flap was developed.  The medial head of the gastrocnemius was freed from the lateral.  Abundant yellow cloudy fluid

and a deep culture was obtained from the knee joint. The gastrocnemius flap was brought across the very thin area of skin over the medial femoral condyle to provide some protection and hopefully all the draining spot to close. A bulky compression dressing was applied and Mr. McCune was placed in a knee immobilizer and taken to recovery.

67. On April 9, 2010, when the Huntington VAMC changed Mr. McCune's dressing, they noted that there was slight active seepage from the midline incision of the left knee. Mr. McCune was to stay on bed rest with his left leg elevated until the wound was dry for 24 hours.

68  Mr. McCune was released from the Huntington VAMC on April 12, 2010, a PICC line was placed so that Mr. McCune could continue to receive the recommened 6 week Vancomycin therapy at home. Home Health Care was arranged to assist Mr. McCune in his recovery.

68. On April 22, 2010, Mr. McCune visited the Huntington VAMC Ortho Clinic for a post op follow up. The surgeon noted very little drainage and removed Mr. McCune's stitches.

69. Mr. McCune Vancomycin therapy end on May 20, 2010.

70. On June 3, 2010, Mr. McCune returned the the Huntington VAMC to have an X-ray on his left knee, the revision was showned to be in good position. It was noted that he had a small scab on the incision. Mr. McCune also complained of lower back pain and pain shooting down both legs. The Huntington VAMC recommend phyical therapy.

71. On June 16, 2010, while Mr. McCune was in for a check up and to discuss his labs, the intake nurse noted that Mr. McCune was "whinning" about his phyical theray after less than one week.

72. Mr. McCune was seen again on July 20, 2010, he complained about the lower back pain and soreness in his stomach. He had a low appetite and had lost 6lbs in a month. Xrays were taken of the lumbar spine and abnormalities were found. Mr. McCune was noted to have dextroscoliosis of the lumbar spine with severe multilevel degenerative disc disease and metastatic disease could not be ruled out. A MRI was recommended for further evaluation.

73.     Mr. McCune had the Lumbosacral Spine MRI on August 9, 2010 at the Huntington VAMC. He was found to have loss of the normal lumbar lordsois some of which related to endplate reactive change. A loss of height and signal throughout the intervertebral disc was also noted. Because meastatic disease could not be excluded and additional evaluation was needed, a CT Scan was also recommended.

74.     On August 25, 2010, a whole body bone scan was preformed on Mr. McCune. This scan revealed abnormal uptake in the lumbar spine, mild uptake in the mid cervical spine, sternoclavicular joints, acromioclavicular joints and feet most consistent with degenerative changes. More tests were needed.

75.     Mr. McCune had a CT scan of the thoracic spine and CT scan of the lumbar spine on September 9, 2010. The findings were an apexed right lumbar scoliosis, a loss of normal spinal curvature, severe loss of disc space and multilevel disc budges.

76.     On Septemeber 15, 2010, because of Mr. McCune's persistent lumbar pain and the abnormal CTs, MRI, and bone scan, the Huntington VAMC had Mr. McCune chart reviewed by Hematology and Oncology department. It was unclear if the bone lesion etiology was related to osteomyelitis or other reactive process, more test were needed.

77.     On September 24, 2010, Mr. McCune had a CT scan of his chest, abdomen and pelvis to search for source of bone metastatic. The liver, gallbladder, spleen, pancreas, adrenal gland and kidneys were all normal in appearance. Clinical correlation would be necessary to make a diagnosis.

78.     On September 28, 2010, a consult request was sent Neurosurgery to help figure out why Mr.McCune was having this complex regional pain syndrome. Mr. McCune had significant sustained radiculopathy and had failed conservative therapy for six weeks. The pain radiated into his thighs and he had problems ambulating. Neurosurgery requested an electromyography and nerve conduct study be preformed prior to seeing Mr. McCune.

79. Mr. McCune had an EMG/NCS test on November 10, 2010, the physical examination showed Mr. McCune had extreme difficulty and limited range of motion of the low back and trying to bend forward, used a rolling walker device to ambulate. Additionally, he had deformities in both of his feet, with clawing of his toes, disminished sensation distally, as well as loss of reflexes distally. The Huntington VAMC concluded that there was active/acute electrodiagnostic evidence of Polyradiculopathies, with evident demyelination axonal loss. Surgical consultation was recommended.

80. On November 29, 2010, Mr. McCune meet with the Huntington VAMC surgeon to discuss possibly having surgery on his back to elevate the excruciating pain. The surgeon noted that Mr. McCune's left leg was actually about 2" shorter than this right leg. Residual shortening of the left leg after mutiple knee surgeries had contributed to Mr. McCune's chronic back problems and his unability to ambulate. They sugessted Mr. McCune be fitted for a shoe lift. At this point Mr. McCune realized that he had been permently damaged by their actions.

## CAUSES OF ACTION
### COUNT I - NEGLIGENCE

81. Plaintiff McCune realleges and reincorporates each and ever allegation above as if fully set forth herein.

82. The Defendant had a duty to provide ordinary care, and to exercise that standard of degree of care and skill required of health care providers, consistent with the expertise that the Defendant presented to the community at large.

83. The Defendant breached its duty of care to Mr. McCune.

84. At all times relevant to this Complaint, the Defendant had a duty to hire competent operators, administrators, employees, agents and staff in order to meet its standard of quality of care of its patients, Mr. McCune included. The Defendent knew or should have known, that the medical staff of the facility was not properly trained, and/or supervised, in a manner necessary

to provide a level of care for Mr. McCune that met all applicable legal requirements; that demonstrated the standard and degree of care and skill required of complete health care providers; and was consistent with the expertise that the defendant presented to the community at large.

85. The Defendant breached its duty by neglegent hiring incompetent, inexperienced and/or underqualified operators, administrators, employees, agents, and staff.

86. The Defendant had a duty to retain only competent and adequately trained operators, administrators, employees, agents, and staff in order to meet its standard of quality of care of its patients, including Mr. McCune.

87. The Defendant breached its duty by negligently retaining incompetent, inexperienced, unqualified and/or inadequately trained operators, administrators, employees, agents, and staff.

88. As a direct and proximate result of the Defendant's negligence, Mr. McCune sustained serious and permanent personal injuries in and about his body; he has incurred medical expenses and other damages, and will continue to incur medical expenses, and other damages in he future; he was forced to endure pain, suffering and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future; he has suffered a loss of enjoyment of life, and will continue to suffer a loss of enjoyment of life.

89. The acts and/or omissions set forth above would constitue a claim under the law of the State of West Virginia.

90. The Defendant is liable pursuant to 28 U.S.C. §1346(b)(1)

## COUNT II – VICARIOUS LIABILITY, RESPONDEAT SUPERIOR OSTENSIBLE AGENCY AND/OR AGENCY

91. Paintiff McCune realleges and reincorporates each and every allegation above as if fully set for herein.

92 At all time relevant to this case, the directors, officers, operators, administrators,

employees, agents and staff were employed by and/or acting on behalf of the Defendant.

93. At all time relevant to this case, the directors, officers, operators, administrators, employees, agents and staff acted within their respective capacities and scopes of employment for the defendant.

94. The directors, officers, operators, administrators, employees, agents and staff negligently and/or recklessly, directly and proximately caused personal injury to Mr. McCune including both acts of omission and acts of commission.

95. As a direct and proximate result of the Defendant's negligence, Mr. McCune sustained serious and permanent personal injuries in and about his body; he has incurred medical expences and other damages, and will continue to incure mdical expences and other damages in the future; he was forced to endure pain, suffering and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future; he has suffered a loss of enjoyment of life, and will continue to suffer a loss of enjoyment of life.

96. The acts and/or omissions set forth above would consitute a claim under the of the State of West Virginia.

97. The Defendant is liable pursuant to 28 U.S.C. §1346(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plainitiff, Dondal L. McCune, does hearby pray that judgement be entered in his favor and against the Defendant as follows:

Medical expenses, pain and suffering, future impairment, and loss of enjoyment of life totaling $1,500,000.00

Dated this 28th day of December 2014.

_____
Plaintiff

| CLAIM FOR DAMAGE INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 EXPIRES: 4-30-88 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| DEPARTMENT OF VETERAN'S AFFAIRS<br>Office of Regional Counsel (325/02)<br>10000 Brecksville Road, Building 1, 5th floor<br>Brecksville OH 44141 | Donald L. McCune<br>518 Watts Chapel Rd<br>Kenna, WV 25248 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
|  | 2-17-1943 | Divorced | Tue. Jan. 26, 2010 | 8:00 am |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons or property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

In January, 2010, I had knee replacement surgery on my left knee. Following that surgery, I have had numerous infections. In addition, I found that my left leg is now 2 inches shorter than my right leg. I live alone and am unable to walk. I believe I've been crippled as a result of negligent medical care and mistakes

### 9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

### 10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Following this surgery I have endured excruciating pain and suffering. I still cannot walk and the fact that my left leg is shorter than my right make matters much worse.

### 11. WITNESSES

| NAME | ADDRESS (Number, street, city, State and Zip Code) |
|---|---|
| Sandra L. Bays | 1501 Kearse Ave. Charleston, WV 25387 |
| VA Health Care Providers | VA Medical Center Huntington WV |

### 12. AMOUNT OF CLAIM (In dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights) |
|---|---|---|---|
| N/A | 1,500,000 | N/A | 1,500,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Donald Lee McCune | 304-382-8385 | 11-11-11 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000. Plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-107
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

*Exibit 2*



**U.S. Department of Veterans Affairs**

Office of the General Counsel
Washington DC 20420

JUN 3 0 2014

In Reply Refer To:
021B:WVK:18677

CERTIFIED MAIL

Mr. Brewster S. Rawls
Attorney at Law
Rawls, McNelis, & Mitchell
211 Rocketts Way, Suite 100
Richmond, VA 23231

Subject: Administrative Tort Claim of Donald McCune–Request for Reconsideration

Dear Mr. Rawls:

Our office has now completed our review of the above-referenced matter under the Federal Tort Claims Act (FTCA), and it is again.

Our review revealed no evidence of any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that resulted in harm regarding an alleged improper performance of left knee replacement surgery at the Huntington, WV VAMC on January 26, 2010. We understand that Mr. McCune's post-operative course has been very difficult, but that has not been shown to have been caused by negligence.

Further action on the matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, United States Code, which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated, however, within 6 months after the date of mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code). If such a suit is filed, the proper party defendant would be the United States, not VA.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

*Mary Bell*

for E. Douglas Bradshaw, Jr.
Assistant General Counsel