IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**DONALD L. MCCUNE,**

    **Plaintiff,**

v.                                                Case No.:   3:14-cv-30867

**UNITED STATES OF AMERICA,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Donald L. McCune ("McCune"), filed a *pro se* Complaint against the United States of America, alleging professional negligence in the rendering of medical services to McCune at the Veterans Affairs Medical Center ("VAMC") in Huntington, West Virginia. Currently pending before the Court is Defendant's Motion to Dismiss. (ECF No. 5). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED,** that the Complaint be **DISMISSED, without prejudice,** and that this action be removed from the docket of the Court.

I.  **Relevant History**

According to the Complaint, on January 6, 2009, McCune underwent a left total knee arthroplasty at the VAMC. (ECF No. 1 at 2). Prior to the procedure, McCune's nasal passages were swabbed for the presence of Methicillin-resistant *Staphylococcus aureus* ("MRSA"), a bacteria that is resistant to many antibiotics.[1] The swabs were reported as negative. McCune recovered as expected in the immediate post-operative period and was released from the VAMC on January 9, 2009. On January 22, 2009, McCune was readmitted to the VAMC with a diagnosis of surgical wound infection at the site of the arthroplasty. (*Id.* at 3). Cultures were taken of the surgical wound, and McCune was treated with antibiotics. Several days later, the cultures were returned and confirmed that the bacteria causing the wound infection was MRSA. Ultimately, McCune had to undergo a second operative procedure to remove infected prosthetic components from his knee. (*Id.*).

Over the next year and a half, McCune experienced a series of complications related to the MRSA infection, which required him to have multiple admissions to the VAMC, undergo numerous surgical procedures, and receive months of intravenous antibiotics. (*Id.* at 4-12). MRSA allegedly spread from the site of the arthroplasty to other areas of McCune's body, including his sternoclavicular joint. Consequently, the head of McCune's clavicle, a portion of his sternum, and his first rib were surgically removed. (*Id.* at 6). McCune then struggled with additional complications at this operative site.

---

[1] Source: Centers for Disease Control and Prevention, National Center for Emerging and Zoonotic Infectious Diseases (NCEZID), Division of Healthcare Quality Promotion (DHQP); available at www.cdc.gov/mrsa (webpage last reviewed Sept. 13, 2013).

In July 2010, after receiving a second knee replacement, McCune began to complain of pain in his low back and soreness in his stomach. (ECF No. 1 at 12). A lumbosacral MRI was performed, which showed changes in his spine that were consistent with a metastatic disease. In September 2010, after several more scans were performed and the source of the abnormality could not be definitively determined, McCune was referred to a neurosurgeon for evaluation. (*Id.* at 13). After undergoing nerve conduction studies, McCune was examined by the neurosurgeon, who found deformities in both of McCune's feet, spinal changes, diminished sensation, and loss of reflexes. McCune was diagnosed with polyradiculopathies, with evident demyelination axonal loss. A surgical consultation was recommended. On November 29, 2010, McCune learned from the examining surgeon that a probable source of his back problems was a left leg that was approximately two inches shorter than the right leg. McCune alleges that the permanent leg shortening was a result of the multiple surgeries performed at the VAMC on his left knee. (*Id.* at 14). McCune was told that he would need to wear an orthopedic shoe with a lift to even out the lengths of his legs and help him ambulate.

On November 11, 2011, McCune filed Standard Form 95 with the Department of Veterans Affairs ("VA"), claiming professional negligence at the VAMC, leading to a permanent shortening of his leg, with secondary pain, suffering, and difficulty ambulating. (ECF No. 1 at 17). McCune demanded $1,500,000 in compensatory damages. On June 30, 2014, the VA issued a final decision, denying McCune's claim. (*Id* at 18). The VA acknowledged that McCune had experienced a very difficult post-operative course related to his left knee arthroplasty, but explained that his complications were not the result of negligence by any medical professional practicing

3

at the VAMC. The VA additionally advised McCune that he had six months to institute an action in federal court for judicial consideration of his claim. Accordingly, McCune timely filed the instant action.

## II. Motion to Dismiss

On March 12, 2015, the United States of America filed a motion to dismiss McCune's complaint on the ground that McCune failed to comply with the requirements of West Virginia's Medical Professional Liability Act. (ECF Nos. 5, 6). The United States argued that while it had waived its immunity to suit under the Federal Torts Claim Act ("FTCA"), liability under the FTCA was governed by the law of the state in which the alleged negligence occurred. In this case, the alleged negligence occurred in West Virginia; therefore, McCune was required to comply with the substantive law of West Virginia in pursuing his medical negligence claim. According to the defendant, under West Virginia law, McCune was required to serve the United States with a screening certificate of merit prior to instituting the action. McCune had failed to do so. Therefore, the United States was entitled to dismissal. (*Id.*).

On April 15, 2015, the undersigned entered an Order allowing McCune through and including May 1, 2015 to file a response to the United States' motion to dismiss. (ECF No. 8). In addition, a hearing on the motion was scheduled to take place on May 27, 2015. On May 27, the parties appeared and argued their respective positions. Based upon the arguments, the undersigned ordered that a ruling on the motion to dismiss would be held in abeyance for sixty days to allow McCune an opportunity to tender a screening certificate of merit. (ECF No. 9). McCune was notified that his failure to provide a certificate of merit would result in a recommendation of dismissal. On July 27, 2015, McCune requested an extension of time to serve the screening certificate of

merit, indicating that he was in the process of meeting with attorneys to obtain legal representation on his claim. (ECF No. 11). The undersigned granted the motion and provided McCune with an additional ninety days, through and including October 26, 2015, in which to tender the certificate of merit. To date, McCune has neither filed the screening certificate of merit, nor requested a further extension of time. The undersigned has also been advised by the United States that no certificate of merit has been provided to its counsel of record.

### III. Discussion

The United States is correct that negligence claims asserted against it under the FTCA are governed by the substantive law of "the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, whether a claim can be maintained depends "upon whether a private individual under like circumstances would be liable under state law." *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Unus v. Kane,* 565 F.3d 103, 117 (4th Cir.2009) ("The FTCA does not itself provide for a substantive cause of action. Rather, in assessing FTCA claims, we apply the substantive law of the state where the alleged tort took place ..."). Given that the alleged negligence in this case occurred at the VAMC in Huntington, West Virginia, the law of that State will apply.

Claims asserting medical negligence in the State of West Virginia are subject to the provisions of the Medical Professional Liability Act, West Virginia Code § 55-7B-1, *et seq.* ("MPLA"). Under the MPLA, before a plaintiff may institute a civil action against a medical professional, the plaintiff must serve the professional with a screening certificate of merit. *Id.* § 55-7B-6(b). The screening certificate of merit must be executed under oath by a health care provider qualified as an expert under West

Virginia law and must state with particularity:

> (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding.

W. Va. Code § 55-7B-6(b). There is an exception to the screening certificate of merit requirement in cases where the plaintiff believes that no certificate of merit is necessary "because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." *Id.* § 55-7B-6(c). In that circumstance, the plaintiff must file a statement "specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit." *Id.* Compliance with these provisions is "substantive" and "mandatory;" therefore, failure to adhere to the MPLA's statutory requirements provides grounds for a dismissal of the complaint. *Stanley v. United States,* 321 F.Supp.2d 805, 807 (N.D.W.Va. 2004).

In this case, McCune failed to serve the United States with a screening certificate of merit prior to filing suit. Even after being advised of the MPLA and his obligations thereunder, McCune did not serve the screening certificate. Taking into account McCune's *pro se* status, the undersigned allowed him over five additional months to provide the United States with a compliant certificate. However, to date, McCune has not fulfilled the prerequisites set forth in the MPLA.

Although given an opportunity, McCune also failed to file a response to the United States' dispositive motion. Accordingly, McCune does not contest that a

6

screening certificate of merit should have been served on the United States. Likewise, McCune does not contend that his case falls within the exception to the screening certificate of merit requirement. Indeed, courts in this circuit have recognized that exceptions to the requirement are rare. *See Giambalvo v. United States,* No. 1:11CV14, 2012 WL 984277, at *4 (N.D.W.Va. Mar. 22, 2012) (rejecting plaintiff's argument that his medical negligence claim, alleging that a bandage wrapped too tightly around his foot caused swelling, pain, tissue death, necrosis, and a MRSA infection, was based upon a well-established theory of liability and required no certificate of merit); *Ellis v. United States,* No. 5:11-CV-00096, 2013 WL 4679933, at *7 (S.D.W.Va. Aug. 30, 2013) (holding that issues, like "what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options [in a dental claim] .... are not within the understanding of lay jurors by resort to common knowledge and experience."); *Callahan v. Cho*, 437 F. Supp. 2d 557, 562 (E.D. Va. 2006) ("As a general rule, a plaintiff is not required to provide a medical screening certificate when the plaintiff's case will not require expert medical witnesses ... Yet, this exception is not easily invoked, as a plaintiff seeking to do so must overcome the general presumption in West Virginia medical malpractice law that "negligence or want of professional skill can be proved only by expert witnesses") (citing *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389, 394 (1997)); *and Morris v. United States*, No. 3:12-CV-73, 2012 WL 6048936, at *5 (N.D.W. Va. Dec. 5, 2012) *aff'd,* 520 F. App'x 205 (4th Cir. 2013) (rejecting plaintiff's claim that the alleged delay in treating his fracture fell within the exception of 55-7B-6(c) and noting "[a] court shall require expert testimony except where the 'lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the

7

understanding of lay jurors by resort to common knowledge and experience.'") (citing *Banfi v. Am. Hosp. for Rehab.,* 529 S.E.2d 600, 605 (W.Va. 2000)).

At first blush, one might conclude that a complaint based upon an alleged hospital-acquired infection could qualify as an exception to the certificate of merit requirement. However, a review of McCune's complaint reveals allegations far too complex to fall within the common knowledge and experience of lay jurors. For example, McCune's allegations raise questions regarding the source of the infection; the timing of the treatment rendered after the infection was diagnosed; the efficacy of the treatment regimen; the physician's decision to terminate part of McCune's antibiotic therapy before the treatment course was concluded; the failure to respond to movement of the antibiotic spacers; the spread of the infection to the sternoclavicular joint, requiring the need for surgery; the cause of McCune's pneumonia and anemia; the cause of the wounds he developed on his heels while in the VAMC; the necessity and effect of the multiple operations performed on McCune's knees; the propriety of the second knee replacement; and the quality of the care he received after the second knee replacement. The standard of care applicable to the medical services rendered at the VAMC, as well as how the various events caused or contributed to the alleged injuries, are matters that require expert testimony. McCune's case is factually too complex and medically complicated to fall within the category of cases that have a "well-established legal theory of liability."

Accordingly, the undersigned **FINDS** that McCune has failed to comply with the statutory requirements of West Virginia's MPLA, despite having been given an ample opportunity to do so. Therefore, his complaint should be dismissed, **without prejudice**. *See Jones v. United States*, No. 1:11CV115, 2013 WL 955202, at *5 (N.D.W.

Va. Mar. 12, 2013) *aff'd,* 531 F. App'x 306 (4th Cir. 2013) (holding that the certificate of merit provisions of W. Va.Code § 55–7B–6 are not intended to restrict or deny a citizen's access to the courts; therefore, dismissal for the failure to supply a certificate of merit should be without prejudice).

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED,** (ECF No. 5), and Plaintiff's Complaint (ECF No. 1) be **DISMISSED, without prejudice,** and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Federal Rules of Civil Procedure 6(d) and 72(b), the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91

(4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff and defense counsel of record.

**FILED:** November 6, 2015

.

_____
Cheryl A. Eifert
United States Magistrate Judge